UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHALENA MARIE SIMS,                          Case No. 18-13108

     Plaintiff                              Robert H. Cleland
v.                                           United States District Judge

SOCIAL SECURITY COMMISSIONER,                Stephanie Dawkins Davis
                                             United States Magistrate Judge
    Defendant.
_____/

**REPORT AND RECOMMENDATION:**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 11, 12)**

## I.   PROCEDURAL HISTORY

### A.   Proceedings in this Court

On October 4, 2018, plaintiff Chalena Marie Sims filed the instant suit.

(ECF No. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3),

District Judge Robert H. Cleland referred this matter to the undersigned for the

purpose of reviewing the Commissioner's unfavorable decision denying plaintiff's

claims for period of disability, disability insurance benefits, and supplemental

security income. (ECF No. 3). This matter is before the Court on cross-motions

for summary judgment. (ECF Nos. 11, 12).

### B.   Administrative Proceedings

Sims filed an application for period of disability and disability insurance

benefits, along with a claim for supplemental security income, on March 28, 2016,

alleging disability beginning December 1, 2015.  (Tr. 18).  The claims were initially disapproved by the Commissioner on October 17, 2016.  *Id*.  Sims requested a hearing and on January 25, 2018, she appeared with counsel before Administrative Law Judge ("ALJ") Martha M. Gasparovich, who considered the case *de novo*.  (Tr. 38-61).  At the hearing, Sims amended her alleged onset date to January 1, 2017.  (Tr. 43).  In a decision dated March 26, 2018, the ALJ found that Sims was not disabled from the alleged onset date through the date of the decision.  (Tr. 15-32).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on September 19, 2018, denied Davis' request for review.  (Tr. 1-6); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    FACTUAL BACKGROUND

Sims, born December 13, 1971, was 45 years old on the amended alleged disability onset date.  (Tr. 31).  Sims worked as a nurse assistant.  (Tr. 30).  Her claims are based on lupus, gastroparesis, foot ulcers, diabetes, depression, and high cholesterol.  (Tr. 229).  Sims alleges that she stopped working on February 1, 2017

because of her conditions.  (Tr. 45, 229-230).[1]  Sims lives with her boyfriend, his mother, and his daughter.  (Tr. 29).

The ALJ applied the five-step disability analysis and found at step one that Sims engaged in substantial gainful activity since the amended alleged onset date. (Tr. 21).  More specifically, the ALJ concluded she was precluded from being disabled during the first quarter of 2017 because she engaged in substantial gainful activity during that period.  However, the ALJ continued through the five steps of the disability analysis, observing that the remainder of her analysis, while applicable to the first quarter of 2017, was primarily focused on the period after March 2017.  *Id.*  At step two, the ALJ found that Sims' obesity, diabetes with neuropathy, lumbar foraminal stenosis, plantar ulcer, lupus, acute episode of congestive heart failure, adjustment disorder with mixed anxiety, and depressed mood were "severe" within the meaning of the second sequential step.  *Id.* However, at step three, the ALJ found no evidence that Sims' impairments singly or in combination met or medically equaled one of the listings in the regulations. (Tr. 21-23).  The ALJ assessed Sims' residual functional capacity ("RFC") as follows:

---

[1]  At the hearing, Sims testified that she stopped working on February 1, 2017 (Tr. 45), but her Disability Report indicates that she stopped working on February 1, 2016.  (Tr. 229-230). The February 1, 2017 date appears to be correct given that Sims had earnings throughout 2016 and in the first quarter of 2017.  (Tr. 212-215).

> A careful consideration of the entire record, I find that
> the claimant has the residual functional capacity to
> perform light work as defined in 20 CFR 404.1567(b)
> and 416.967(b) except she requires an ability to stand and
> walk no more than six hours in an eight-hour day. She
> could sit up to six hours in an eight-hour day. Lifting is
> limited to 20 pounds occasionally and 10 pounds
> frequently. Kneeling, crouching, crawling, bending,
> climbing, and squatting would be limited to occasional.
> She could never climb ladders, ropes, or scaffolds. She
> would need a clean air environment free from
> concentrated levels of dust, fumes, chemicals, gases, and
> other airborne irritants. She is limited to low stress work
> defined as no quick decision making and no quick
> judgment required on the job. She is further limited to
> work involving no interaction with the public and only
> occasional interaction with co-workers and supervisors.
> She would be unable to perform jobs that are fast pace,
> high production, or which require frequent changes in
> task expectations or locations.

(Tr. 23). At step four, the ALJ found that Sims could not perform her past relevant work as a nursing assistant. (Tr. 30). At step five, the ALJ denied Sims benefits because she found that there were jobs that exist in significant numbers in the national economy that she could perform. (Tr. 31-32).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The

4

administrative process itself is multifaceted in that a state agency makes an initial

determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is

not found during this administrative review process, the claimant may file an

action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.

1986).

This Court has original jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review is limited

in that the court "must affirm the Commissioner's conclusions absent a

determination that the Commissioner has failed to apply the correct legal standard

or has made findings of fact unsupported by substantial evidence in the record."

*Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v.

Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether

substantial evidence supports the ALJ's decision, "we do not try the case de novo,

resolve conflicts in evidence, or decide questions of credibility." *Bass v.

McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant." *Rogers v.

Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.

Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.     Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability

Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq.*) and the

Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq.*).

Title II benefits are available to qualifying wage earners who become disabled

prior to the expiration of their insured status; Title XVI benefits are available to

poverty stricken adults and children who become disabled.  F. Bloch, Federal

Disability Law and Practice § 1.1 (1984).  While the two programs have different

eligibility requirements, "DIB and SSI are available only for those who have a

'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability"

means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis set forth at 20 C.F.R.

§§ 404.1520, 416.920.  Essentially, the ALJ must determine whether:  (1) the

plaintiff is engaged in significant gainful activity; (2) the plaintiff has any severe

impairment(s); (3) plaintiff's impairments alone or in combination meet or equal a

Listing; (4) the claimant is able to perform past relevant work; and (5) if unable to

perform past relevant work, whether there is work in the national economy that the plaintiff can perform. (*Id.*). "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding rejecting the existence of disability, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    Analysis and Conclusions

1.    Limitations set forth in May 2017 discharge instructions

Sims asserts that the ALJ failed to include or discuss her physical restrictions and limitations outlined by her physician, Dr. Hasan, when she was released from the hospital on May 31, 2017.  (Tr. 574).  After suffering a myocardial infarction, Sims was released from the hospital and was given the following restrictions because of burning pain in her upper left portion of her torso, involving her arm pit and breast areas:  "No lifting, pushing or pulling with the affected arm."  *Id*.  Sims contends that the ALJ erred by not considering these restrictions because the effect of the restrictions limited Sims to one-handed work, given that her left arm was compromised.

In response, the Commissioner points out that nothing in Dr. Hasan's discharge instructions suggests that he intended the restrictions to be permanent. *Troy v. Colvin*, 266 F.Supp.3d 288, 294 (D.C. 2017) (There was no indication that physician intended the restrictions to carry forward permanently); *Price v. Colvin*, 2013 WL 6528906, at *5 (D. Md. Dec. 11, 2013) ("While the discharge instructions … indicated the need for either crutches or a walker post-surgery, there is nothing in the record to demonstrate that this need was expected to be permanent or last at least twelve continuous months.") (internal citation omitted). The Commissioner argues that a more reasonable inference is that Dr. Hasan

directed Sims to limit her activities until she had an opportunity to follow up with her doctors in "1 to 2 weeks."  (Tr. 576).  The Commissioner suggests that it is unlikely that Dr. Hasan intended to permanently restrict Sims from such activities as using a pool, taking a bath, engaging in sexual activity, or crossing her legs. (Tr. 574).  *See Troy*, 266 F. Supp. 3d at 294 (inferring that the discharge instructions could not have been permanent because they advised the plaintiff to "avoid blowing her nose and coughing," and were not repeated in any subsequent treatment records).

The Commissioner also points out that when Dr. Hasan discharged Sims after a second hospital visit one week later, he did not include any of these restrictions, and cleared her to resume activities "[a]s tolerated."  (Tr. 568). Accordingly, the Commissioner argues that because Dr. Hasan revised his earlier instructions (compare Tr. 574 with Tr. 568), the ALJ properly cited the June 6, 2017 note as the more relevant assessment of Sims' ability to function.  (Tr. 26, citing Tr. 568).  *Cf. Tiffany v. Colvin*, 2014 WL 1922929, at *15 (W.D. Ky. May 14, 2014) (a treating source opinion need not be given complete deference if, inter alia, it "is in tension with a prior opinion of the same treating source" (citing cases)); *see Maher v. Sec'y of Health & Human Servs*., 898 F.2d 1106, 1109 (6th Cir. 1989) ("[A] lack of physical restrictions constitutes substantial evidence for a finding of non-disability.").  The Commissioner also argues that subsequent

treatment records further undermine her argument that Dr. Hasan's initial
discharge instructions "were relevant," given that between October and December
2017, Dr. Sanghvi consistently noted that Sims had normal strength and sensation
in her upper extremities (Tr. 577-78, 580-81, 583-84, 586-87), contradicting her
assertion that her "left arm was compromised" due to "burning pain" in her torso
and armpit.  Moreover, Dr. Sanghvi did not place specific restrictions on Sims use
of her left arm, but instead counseled her on the "importance of aerobic exercise."
(Tr. 582, 588).

The undersigned agrees with the Commissioner that the ALJ's analysis is
supported by substantial evidence.  The restrictions set forth in the discharge
instructions bear all the indicia of temporary restrictions, not those expected to last
at least 12 months.  The present circumstances are similar to those in *Holloway v.
Comm'r of Soc. Sec.*, 2015 WL 3970818, *9 (M.D. Tenn. June 30, 2015).  At issue
in *Holloway* were the restrictions in the plaintiff's discharge instructions following
hospitalizations for a heart catheterization and stent placement.  After the first
procedure, the plaintiff's physician restricted her to bed-rest and minimal activity
and recommended following up with the treating cardiologist in one week.  After
the second procedure, the plaintiff's physician restricted her to lift no more than
five pounds and to minimal exercise and activity.  *Id.*  The plaintiff argued that "in
the absence of any evidence to the contrary," such restrictions should reasonably

12

be deemed permanent.  The court rejected the plaintiff's argument as specious, concluding that even though the restrictions were not explicitly labeled "temporary," they were given in the context of a "discharge summary," alongside other post-operative wound care, diet, and follow up appointment instructions. Instead, the court concluded that "in the absence of any indication that these were intended to be enduring restrictions, the ALJ was fully justified in not analyzing them as treating physician opinions."  *Id*. (citing *Lawrence v. Colvin*, 2014 WL 3512603, at *8 (D. Or. July 10, 2014) ("The Court finds the ALJ reasonably determined that plaintiff's post-surgical limitations were intended to be temporary, such that they did not need to be incorporated into the RFC.  Discharge instructions are typically for a fixed duration; by definition, they relate only to the immediate post-procedural period.").

Similarly, the lifting, pushing and pulling restrictions placed on Sims after her hospitalization were in the context of a discharge summary alongside such restrictions as "no driving," "no pool, tub bath, or hot tub," "no sexual activity," "avoid bending," and "avoid crossing your legs," and accompanied other discharge instructions for signs to watch for, diet, medication, reasons to notify physician, pain management instructions, wound and personal care, and follow up appointments.  (Tr. 574-576).  As in *Holloway*, nothing in these discharge instructions suggests that the restrictions were anything other than temporary.

Such a conclusion is buttressed by the lack of restrictions imposed by Dr. Hasan

merely one week later. (Tr. 568). Accordingly, given that the restrictions were

lifted after just one week, the discharge instructions from May 31, 2017 were

plainly not intended to be permanent and the undersigned finds no error in either

the ALJ's failure to specifically discuss the instructions or to incorporate them into

the RFC.

2.    Vocational testimony

Sims argues that the ALJ inaccurately characterized her impairments to the

vocational expert because she did not include those restrictions set forth in the May

31, 2017 discharge instructions. However, as discussed above, the subject

restrictions could not reasonably be characterized as permanent and the ALJ did

not err by declining to include them in the RFC. Because the hypothetical question

to the vocational expert on which the ALJ relied restates the RFC, there is no error

at step five. *See Hatton v. Comm'r of Soc. Sec.*, 2018 WL 1278916, at *8 (E.D.

Mich. Feb. 14, 2018), report and recommendation adopted, 2018 WL 1254948

(E.D. Mich. Mar. 12, 2018) (Where the hypothetical question to the vocational

expert restated the RFC and the RFC accurately portrayed the plaintiff's

limitations, there was no error at Step Five.); *Sellers v. Berryhill*, 2018 WL

989563, at *6 (E.D. Tenn. Jan. 22, 2018), report and recommendation adopted,

2018 WL 988084 (E.D. Tenn. Feb. 20, 2018) ("Having found that substantial

evidence supports the ALJ's RFC determination, the Court finds the hypothetical question posed to the vocational expert, and the ALJ's reliance on the vocational expert's response, was appropriate and constitutes substantial evidence at step five that other jobs exist in the national economy that the Plaintiff can perform."). Thus, the ALJ was entitled to rely on the VE's testimony, which provides substantial evidence for the ALJ's step five determination.

3.     Reliance on incorrect record

Sims also suggests error because the ALJ considered an exhibit that was subsequently deleted and removed from the transcript because it belonged to another SSA number holder.  (Tr. 594).  According to Sims, the ALJ erroneously considered this evidence because the consultative psychologist had recommended Sims to be evaluated by a psychiatrist, which was not done.

In response, the Commissioner explains that Sims reportedly started seeing Dr. Kakar around September 2017, and her attorney submitted two treatment notes from Dr. Kakar after the hearing.  (Tr. 42; see Tr. 18, 28).  However, those notes pertained to a different patient, and the ALJ did not realize it before issuing her decision—perhaps because the records were "difficult to decipher."  (Tr. 28). Sometime after the ALJ's decision, the Office of Appellate Operations (which comprises the Appeals Council), discovered the error and removed the records from the file in accordance with HALLEX § I-3-2-24 (Tr. 594) (noting removal of

Exhibit 19F).  Sims retained a new attorney to represent her before the Appeals Council, who did not allege any error in the ALJ's consideration of Exhibit 19F and did not submit any corrected records from Dr. Kakar.  (Tr. 12-13, 180).  Even though the Appeals Council notified Sims' attorney that he had 25 days to submit "a statement about the facts and the law in this case or additional evidence," nothing was submitted.  (Tr. 7).

The Commissioner contends that, in the context of this case, the ALJ's consideration of a third party's medical records does not require remand.  *See Calvert v. Comm'r of Soc. Sec.*, 2013 WL 5274374, at *3 n.5 (E.D. Mich. Sept. 18, 2013) (affirming ALJ's decision despite her discussion of a document that pertained to a different patient).  "Generally, where medical records belonging to others are found in a claimant's file, the error is harmless so long as the ALJ recognized that the records were not attributable to the claimant, or substantial evidence still supports the ALJ's determination despite the consideration of third-party records."  *Wyatt v. Colvin*, 2015 WL 5012140, at *9 (S.D. W. Va. July 31, 2015) (collecting cases), adopted by 2015 WL 5025292 (S.D. W. Va. Aug. 24, 2015).  The Commissioner acknowledges that the first exception does not apply here but asserts that the second exception does apply.  According to the Commissioner, the ALJ's consideration of the third-party records did not harm Sims; rather, it seems to have helped her show that her depression and anxiety

were severe.  The ALJ had difficulty reading the third-party records from Dr.

Kakar but found that they documented "normal mental status exams" and

prescriptions for Zoloft and Lamictal.  (Tr. 28, citing Exhibit 19F/2-4).  Despite

those benign findings, the Commissioner says that the ALJ still gave Sims the

benefit of the doubt and found that her anxiety and depression were severe.  (Tr.

28).  The Commissioner further points out that the ALJ accommodated those

impairments with a mental RFC that was more favorable to Sims than the clinical

evidence warranted, restricting her to simple tasks and adding stress, pace, and

social limitations that were generally consistent with Dr. Marshall's (the reviewing

psychologist) October 2016 assessment.  (Tr. 23, 28; see Tr. 74-76, 91-93).

According to the Commissioner, the ALJ's reading of the evidence was highly

favorable given that Sims denied a depressed mood, fatigue, or difficulty sleeping

during her recent visits with Dr. Sanghvi (Tr. 580, 583, 586), and she was not

taking Lexapro as prescribed (Tr. 581, 584, 587).

Sims, on the other hand, points to no evidence in the record explaining how

the ALJ's error harmed her.  She also cites no evidence suggesting that her mental

impairments limit her functioning more than as found by the ALJ.  *See Toins v.*

*Comm'r of Soc. Sec*., 2014 WL 6389582, at *15 (E.D. Mich. Nov. 14, 2014)

(upholding ALJ's RFC finding where "plaintiff [failed to point to] record evidence

that any of her treating physicians made . . . findings as related to [p]laintiff's

functional limitations."); *Richard v. Astrue*, 2011 WL 4688788, at *5 (N.D. Ohio

Oct. 4, 2011) (Where there is a lack of functional limitations in the record due to

an impairment, failure to include any functional limitations in the RFC is not

error.); *Hill v. Comm'r of Soc. Sec.*, 560 Fed. Appx. 547, 551 (6th Cir. 2014)

("[D]isability is determined by the functional limitations imposed by a condition,

not the mere diagnosis of it."); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423

(6th Cir. 2008) (claimant bears burden of demonstrating need for more restrictive

RFC).  Accordingly, the undersigned finds that any error committed by the ALJ in

relying on the records of a third-party is harmless and the ALJ's RFC regarding

Sims' mental functioning is supported by substantial evidence, including Dr.

Marshall's assessment.  *Johnson v. Berryhill*, 2019 WL 2744594, *9 (N.D. Ohio

June 13, 2019), report and recommendation adopted, 2019 WL 2743775 (N.D.

Ohio July 1, 2019) ("State Agency opinions may constitute substantial evidence

supporting an ALJ's decision."); *Cantrell v. Astrue*, 2012 WL 6725877, at *7 (E.D.

Tenn. Nov. 5, 2012) (finding that the state agency physicians' reports provided

substantial evidence to support the ALJ's RFC finding); *Brock v. Astrue*, 2009 WL

1067313, at *6 (E.D. Ky. Apr. 17, 2009) ("[T]he argument that the findings of the

two non-examining state agency physicians cannot constitute substantial evidence

is inconsistent with the regulatory framework.").

As to Sims' observation in her brief that "[a] psychiatric evaluation was never ordered by the [ALJ]," the undersigned finds this argument so undeveloped, it is waived.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").  And, as the Commissioner correctly points out, "[a]n ALJ has discretion to determine whether further evidence," such as a psychiatric evaluation, is necessary.  *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001).  Sims simply does not make the case that the ALJ's failure to obtain a psychiatric evaluation was necessary or constitutes reversible error, particularly considering that Sims had a consulting examination by a psychologist (Dr. Terrance Mills) and Dr. Marshall conducted a review of her medical records.  (Tr. 70, 549-552).

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that the Commissioner's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: November 22, 2019                    s/Stephanie Dawkins Davis
                                           Stephanie Dawkins Davis
                                           United States Magistrate Judge